UNITED STATES, Appellee

v

ROBERT W. RICHARD, Private E–1, U. S. Army, Appellant

7 USCMA 46, 21 CMR 172

No. 7048

Decided May 4, 1956

*First Lieutenant Philip L. Evans* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James M. Scott*.

*First Lieutenant Peter J. Hughes* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Tried upon a charge of rape, the accused was convicted of assault with intent to commit rape and was sentenced to dishonorable discharge, total forfeitures and confinement at hard labor for five years. After approval by the convening authority and affirmance by a board of review, we granted the accused's petition for review to determine the effect of certain disclosures made by a court member at the outset of the trial.

The facts giving rise to the charge are not material to the issue. It is sufficient to note simply that the prosecutrix testified that the accused hired her taxi, directed her to the outskirts of the community, where he accomplished his purpose by force and against her consent. Upon completion of the crime, the pair returned to the vehicle and the prosecutrix drove the accused to his post. There she reported that the accused had assaulted her and he was taken into custody. Thereafter the prosecutrix alleged that she had been raped. The accused remained silent at his trial, but produced evidence of his good character.

After the court was convened, trial counsel inquired whether the law officer or any member of the court was aware of any facts which might form the basis for a challenge by either side against him. This colloquy followed:

"MAJOR DES JARLAIS: I think there is cause to challenge myself for cause. Would you like for me to explain the reasons?

"LO: Generally; briefly.

"MAJOR DES JARLAIS: I have been a member of a court which tried the accused for an offense which was related to the type of offense involved today. I was one of the first officers in the battalion approached by the CID on another charge generally in the area of the type of offense committed today. I was consulted

by a psychiatrist who interviewed the accused—

"LO: That is sufficient.

"MAJOR DES JARLAIS: I am aware of certain polygraph—

"LO: That is sufficient. Subject to objection of any member of this court, Major Des Jarlais will be excused."

Since there was no objection, the member withdrew. Both the prosecution and the defense announced they had no challenges for cause and did not desire to exercise their peremptory challenges. The accused was then arraigned and advised of his right to present any motions he might have. At this point the defense counsel requested a hearing before the law officer. When his request was granted he presented a motion for mistrial asserting that the disclosures of Major Des Jarlais were so inherently prejudicial that their utterance in open court precluded the possibility of a fair and impartial trial. The law officer overruled the motion, declaring that "the matters developed at that stage of the trial are not prejudicial to the fair trial of the accused in the light of the oath that the members of the court take: To be governed solely by the evidence introduced at the trial." The defense reasserted its motion at the close of trial, and in a closed session before the law officer introduced evidence tending to show that at least one member of the court was affected by Major Des Jarlais' statements. Again the motion was denied. At no time during the course of the trial did the law officer admonish the court to disregard the questioned assertions.

The declaration of Major Des Jarlais very certainly was a valid basis for challenge against him, and the law officer properly excused him. This did not, and could not, end the matter, however. His assertion went far beyond the mere statement of a ground for challenge. It

**49**

detailed a history of the accused's involvement in escapades similar to that charged in the instant case. As if to clinch his claim of prior knowledge or of a fixed opinion on the merits, this court member attempted to show his familiarity with a psychiatric examination and a polygraph test to which the accused was subjected. Although the law officer very effectively terminated this impetuous dissertation, the other court members were left to speculate about the possible significance of these tests.

Reference to other offenses or acts of misconduct involving an accused are generally improper. Paragraph 138*g*, Manual for Courts-Martial, United States, 1951. United States v Yerger, 1 USCMA 288, 3 CMR 22. This rule is firmly rooted in logic, and intimately connected with the fundamental requirement that tribunals of justice accord all appearing before them a fair trial. United States v Yerger, supra; United States v Johnson, 3 USCMA 447, 13 CMR 3; United States v Gibson, 5 USCMA 699, 18 CMR 323; Pierce v United States, 86 F2d 949 (CA6th Cir). The demands of neither logic nor justice were met, however, by the law officer's position that an accused cannot be prejudiced by the disclosure of such matters at an early stage of the trial. Civilian courts uniformly condemn the exertion of improper influences on the impartiality of the triers of fact, and no distinction based on the stage at which it appears nor the source from which it proceeds has been drawn. So, unauthorized communications with third parties have required reversal. Stone v United States, 113 F2d 70 (CA6th Cir). Our own decisions require a similar result. United States v Adamiak, 4 USCMA 412, 15 CMR 412. Similar reversive action is required when untoward discussion of a case has been published in newspapers prior to or during the course of a trial. United States v Delaney, 199 F2d 107 (CA1st Cir); Griffin v United States, 295 Fed 437 (CA3d Cir). Remarks of counsel made in closing arguments conveying the impression that accused has been involved in previous brushes with the law have voided convictions. Ross

v United States, 180 F2d 160 (CA6th Cir). Moreover, and of special importance in the setting of this case, even the questions put by a judge to jury members questioned upon voir dire have been held prejudicial. In Marson v United States, 203 F2d 904 (CA6th Cir), rather than put the questions painstakingly prepared by counsel to determine the possibility of bias or prejudice—and containing no mention of criminal activities—the trial judge merely asked whether they had ever heard about the defendant in connection with any criminal activities. Objection was immediately made and a motion for mistrial was presented by counsel for the defendant, but denied. Upon appeal it was held that the question suggested the association of the defendant's name with criminal activities, and thus was prejudicial.

It has been suggested that the Manual's requirement that court members disclose all known grounds for challenge permits, even demands, a relaxation of the rule prohibiting evidence of other offenses. In this particular paragraph 62*b*, Manual for Courts-Martial, supra, provides "[The trial counsel] will then disclose in open court every ground for challenge believed by him to exist in the case and will request that the law officer and each member do likewise with respect to grounds of challenge, whether against the law officer or member himself." Compulsory disclosure of disqualifying facts is designed to insure each defendant an unprejudiced and legally qualified forum. United States v Schuller, 5 USCMA 101, 17 CMR 101; United States v Daily, 139 F2d 7 (CA7th Cir); Tierney v United States, 280 F 322 (CA4th Cir); United States v Lampkin, 66 F Supp 821 (SD Fla); United States v Freedland, 111 F Supp 852 (D ND). Thus, the object of each rule is precisely the same. However, the proffered suggestion does not require us to determine which of the two rules is paramount upon a theory that when two principles are in conflict the lower must give way to the greater. There is simply no conflict between them. The language of paragraph 62 of the Manual, in each of its

subdivisions, amply demonstrates that only the ultimate ground for challenge need be disclosed. It sets out in simple, concise language various grounds for challenge, the disclosure of which would in no way adversely affect the person on trial. The questions it proposes for use by the trial counsel or defense counsel are designed to elicit simple affirmative or negative responses. Nothing in these provisions warrants the conversion of these safeguards against miscarriages of justice into a means of destroying another similar safeguard. To suggest it is to claim that the end justifies the means. To adopt such an interpretation is to countenance perversion of justice under the guise of insuring it. Thus we reject the suggestion without qualification.

The Government contends that in meeting the situation presented by Major Des Jarlais' state- ▮ ment the accused was limited to the employment of the challenging procedures provided by the Uniform Code of Military Justice and the Manual for Courts-Martial. Having chosen the improper tactic of a motion for mistrial, we are told, the accused has waived his right to have the effect of these disclosures determined upon appeal. This argument misconceives the purpose of a motion for mistrial. This device is designed to cure errors which are manifestly prejudicial, and the effect of which cannot be obliterated by cautionary instructions or the ends of public justice would otherwise be defeated. United States v Stringer, 5 USCMA 122, 17 CMR 122; United States v Carver, 6 USCMA 258, 19 CMR 384; Stone v United States, 113 F2d 70 (CA6th Cir); United States v Giles, 19 F Supp 1009 (WD Okla); Perry v State, 146 Fla 187, 200 So 525; State v Stenick, 118 NJL 381, 192 Atl 268; Grayhouse v State, 65 Ga App 853, 16 SE2d 787. In the instant case, before one word of evidence had passed the lips of a single witness, the court-martial was informed that this accused, who was about to be tried upon a charge of rape, was tried upon a similar charge, and was investigated in connection with another. Moreover, they were informed that his whole pattern of conduct presented psychiatric overtones which required close examination, and, in connection with this very case, he had been subjected to a lie detector test. Considering Major Des Jarlais' belief that knowledge of the latter circumstances constituted a ground for challenge against him, the remaining court members were compelled to infer that the results of this test were distinctly adverse to any claim of innocence the accused may have asserted. However honestly the member presented these facts, or however dispassionately the remaining members may have received them, their every syllable contained the seeds of prejudice. Only a harvest of harm could result. Under the circumstances it was impossible to wipe out the harm already done. To require an examination of the remaining members would serve only to aggravate the prejudice. Boyles v United States, 295 Fed 126 (CA6th Cir); United States v Delaney, 199 F2d 107 (CA1st Cir).

In its final argument, the Government asserts that since the evidence of the accused's guilt is compel- ▮ ling, the law officer did not abuse his discretion in denying the motion. It is prefectly true that action upon a motion for mistrial rests within the law officer's sound discretion. But this discretion is generally to be exercised in the light of the circumstances existing at the time the motion is presented. Here, the questioned assertions were made at the outset of trial before it was possible for the law officer to consider their effect upon the evidence. At that point there simply was no evidence. Hence, his decision upon the motion turned exclusively on the character of the assertions, and their inherent capacity for prejudice is amply demonstrated by the above-cited cases. His ruling therefore was an abuse of discretion. Moreover, when the motion was reasserted at the end of the trial, defense counsel supported his argument by introducing evidence of a conversation occurring after an adjournment in the trial involving two court members and the reporter. The latter expressed the belief that Major Des Jarlais' statements would

**51**

require a rehearing. Both members agreed with this opinion and one declared that he did not appreciate the implications of these statements until it was later shown that the accused had been reduced from sergeant to private. Thus, the defense established that the impact of Major Des Jarlais' disclosures, upon at least one court member, was distinctly adverse to the accused. The law officer's denial of the defense motion upon this state of the evidence was a further abuse of discretion.

One final circumstance bears discussion. The sole eyewitness appearing for the prosecution was the alleged victim. Her testimony, if believed, would have warranted a finding of guilty only of the offense charged. Significantly, however, the finding returned involved a lesser offense. To say the evidence was compelling in the light of this result is to fly in the face of the findings. This result indicates beyond peradventure the effect of Major Des Jarlais' disclosure, and reversal is required. Pierce v United States, 86 F2d 949 (CA 6th Cir).

The findings are set aside and a new trial is ordered.

Judge LATIMER concurs in the result.

Judge FERGUSON did not participate in the decision in this case.