UNITED STATES, Appellee

v

PAUL D. WOLF, Sergeant, U. S. Army, Appellant

9 USCMA 137, 25 CMR 399

No. 10,128

Decided April 11, 1958

*James D. St. Clair, Esquire,* argued the cause for Appellant, Accused. With him on the brief were *Colonel James M. Scott* and *Captain John F. Christensen.*

*First Lieutenant Thomas M. Lofton* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *Major Thomas J. Nichols.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A board of review affirmed the accused's conviction for larceny and housebreaking, in violation of Articles 121 and 130, respectively, of the Uniform Code of Military Justice, 10 USC §§ 921 and 930. We granted review to consider the correctness of its decision.

Two of the accused's assignments of error relate to a claim of entrapment. The board of review gave full and careful consideration to both issues. In a well-reasoned opinion it concluded that the idea of breaking into the Student Enlisted Men's Club at the Army Engineer School, Murnau, Germany, did not originate with officials of the Government, and, therefore, entrapment is not present. 23 CMR 546. We reach the same conclusion.

The evidence shows that in December 1955, the Castle Enlisted Men's Club at the Engineer School was burglarized. Sergeant Halley, a mess sergeant and a member of the Board of Governors which controlled the operations of the Castle Club and the Student Club, suspected the accused. He determined to establish the accused's guilt. He cultivated the accused's friendship and boasted to him of "jobs he had pulled." Eventually the accused told him he had done the Castle Club "job."[1]

---

[1] The accused admitted telling Halley that he did the Castle job, but he maintained that he did so to "inject a note of comedy" into Halley's boasting about his criminal exploits.

138

The accused's remarks were reported to Captain Martin and Sergeant Cleary, the officer custodian and president, respectively, of the Board of Governors. They explored ways and means of obtaining evidence of the accused's guilt, but they did not decide upon any definite course of action. On March 15, 1957, Halley heard that the accused might return to the United States on emergency leave. He conferred with Captain Martin. They concluded that speedy action was required if they were "to settle the case" themselves, but no agreement on a specific plan was reached. A few hours after this meeting Halley talked to the accused. He testified that the accused told him that he needed money for his trip and had proposed that they "rob" the Student Club that night.[2] Captain Martin was informed of the plan. In turn, he notified the Executive Officer and Acting Commander of the School. They arranged to, and did in fact, apprehend the accused immediately after commission of the offense early the next morning.

Viewed from one standpoint, the evidence leaves little room for a claim of entrapment. The court-martial could have believed Halley's testimony that the plan to break into the Student Club originated with the accused. United States v Choat, 7 USCMA 187, 21 CMR 313. But even if we assume that Halley proposed the plan, the evidence does not show entrapment.

When a criminal act is "the product of the creative activity of . . . [the Government's] own officials" the law will not permit prosecution of a person lured into the commission of the offense. Sorrells v United States, 287 US 435, 451, 77 L ed 413, 53 S Ct 210; United States v Hawkins, 6 USCMA 135, 19 CMR 261. However, if the act is the product of someone "other than a person acting for the government," public policy, as expressed in the doctrine of entrapment, does not prevent prosecution of the offender. Polski v United States, 33 F2d 686, 687 (CA 8th Cir) (1929), cert denied, 280 US 591, 74 L ed 640, 50 S Ct 39; United States v De Marie, 226 F2d 783 (CA 7th Cir) (1955), cert denied, 350 US 966, 100 L ed 839, 76 S Ct 436. Not every person in uniform is an agent of the Government. United States v Rogan, 8 USCMA 739, 25 CMR 243; United States v Arthur, 8 USCMA 210, 24 CMR 20; United States v Volante, 4 USCMA 689, 16 CMR 263. The board of review concluded that Halley was acting in an entirely private capacity as a volunteer when he and the accused made the plan to burglarize the Student Club. There is ample evidence to support that finding. The board of review also found, and the evidence unmistakably shows, that Captain Martin and Sergeant Cleary were not aware of the plan to burglarize the club until after it had been developed by Halley and the accused. Nor does it appear that they even discussed or contemplated a scheme to burglarize the Student Club as a means of establishing the accused's connection with the Castle Club incident. Consequently, even if they are regarded as Government agents, they did nothing to induce the accused to commit the crimes charged. We, therefore, find no merit in the allegations of error relating to entrapment.

The remaining error assigned by the accused concerns the law officer's ruling denying a motion for a mistrial. The basis for the motion was an unresponsive answer by Halley to a question asked by defense counsel. The pertinent questions and answers and the defense motion are as follows:

"Q When did Sergeant Wolf tell you that he was using table clothes, that he used table clothes on the Castle Club job?

"A That was either on March the 10th or it was on the robbery on the 15th.

"Q But no one was ever present safe which was supposed to contain $700. The accused agreed to participate.

---

[2] The accused's version of this conversation is to the effect that Halley told him he needed money and asked him to join in breaking into the Club's

when Wolf had these conversations with you, were they?

"A No Sir. I would like to bring out to the defense that I did willingly submit to a polygraph test.

"INDIVIDUAL DEFENSE COUNSEL: Well, here is a motion for a mistrial. The defense moves for a mistrial upon the grounds of prejudice to the accused."

The grant or denial of a motion for a mistrial rests in the sound discretion of the law officer. His ruling will not be set aside on appeal unless he abused his discretion. United States v Lackey, 8 USCMA 718, 25 CMR 222; United States v Richard, 7 USCMA 46, 21 CMR 172. Relying upon the *Richard* case the accused maintains that the law officer abused his discretion here. However, the only point of similarity between this case and *Richard* is the fact that mention was made of a polygraph test. In the *Richard* case, the reference was made by a court member during the challenge procedure as part of his disclosure of knowledge of the commission of other similar offenses by the accused. There was also evidence tending to show that at least one member of the court was influenced by the reference to the other offenses. Finally, there was no instruction by the law officer to disregard the improper matter. The crux of the case was the disclosure of other acts of misconduct of the same nature as those for which the accused was on trial. Here, the reference to the lie detector test was made by a witness in connection with his own testimony.[3] The law officer ordered the testimony stricken from the record and instructed the court members to disregard it. In part, he advised the court members as follows:

". . . The reference by a witness to any test or examination conducted outside of the court, the results of which are not admissible in this court, or even a statement or an inference by a witness that someone outside of court believes his story, must not affect the members of the court in arriving at their own independent opinion of the witness's truth and veracity or lack of the same."

We find no abuse of discretion in the denial of the motion for a mistrial. Accordingly, we affirm the decision of the board of review.

Judge LATIMER concurs.

Judge FERGUSON concurs in the result.

---

[3] It is arguable that the reference to the polygraph test falls within the rule permitting the admission into evidence of a prior consistent statement when the witness' testimony is discredited by the imputation of bias, prejudice or a motive to testify falsely. United States v Sledge, 6 USCMA 567, 20 CMR 283. We need not, however, reach this question.