UNITED STATES, Appellee

v

RONALD L. HORNE, Basic Airman, U. S. Air Force, Appellant

9 USCMA 601, 26 CMR 381

No. 11,127

Decided September 19, 1958

*Lieutenant Colonel Philip J. Williamson* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb*.

*Major Fred C. Vowell* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels*.

## Opinion of the Court

HOMER FERGUSON, Judge:

Accused was convicted of wrongful possesion of marijuana, in violation to

Article 134, Uniform Code of Military Justice, 10 USC § 934. Briefly, insofar as pertinent to this appeal, the facts

602

are as follows: One Airman Second Class Nelson approached the accused relative to the purchase of marijuana. He had discussed this maneuver with the Office of Special Investigations. When the accused informed Nelson that he was under restriction and unable to leave the base, Nelson conferred with the accused's first sergeant and had him removed from restriction so that he might leave the base to purchase marijuana. After informing the Office of Special Investigation agents of their plan, and of the geographical point of their return to base, Nelson, together with accused and one Airman Second Class McDearmon, drove to town in Nelson's automobile. Nelson asked the accused if he was going to "get some" cigarettes for himself. The accused answered that he was "broke." Nelson then gave him $4.00 and told him to get as many as he could; that he "only wanted one each for myself and my girl" and the accused "should keep the rest for himself." A purchase of seven cigarettes was made. Two cigarettes were given to Nelson, as per his request, the accused retaining the other five. Shortly after their return to base, the accused was apprehended and the five marijuana cigarettes were found on his person. Accused then executed an incriminatory pretrial statement. At trial, accused was represented by regularly appointed assistant defense counsel, waiving the presence of the regularly appointed defense counsel. The acting defense counsel exercised no challenges, did not question the agent who made the arrest, but addressed a few perfunctory inquiries relative to the chain of custody of the marijuana to the second Government witness. He stipulated to the qualifications of the narcotics expert and his analysis. He made no opening statement, no closing argument, and no objections nor requests for instructions.

Before this Court the accused has executed an affidavit to the effect that he had discussed the defense of entrapment with defense counsel. Therein he states that the defense counsel informed him that he had agreed with the prosecution not to raise that defense in consideration of the prosecution's nonintroduction of the accused's pretrial statement.

In contradiction, the defense counsel has filed an affidavit in which he specifically denies that he ever "talked over the defense of entrapment" with the accused. Therein he further states that his investigation of the case prior to trial had "conclusively demonstrated" that such a defense did not exist and that any talk in that connection "would be frivolous in the extreme."

We granted accused's petition for review to determine whether there was a denial of due process of law through failure of adequate representation at trial.

Turning first to a consideration of the propriety of waiving the defense of entrapment, we must note the closeness with which Nelson worked with the Office of Special Investigations, the fact that he procured accused's release from restriction without which the commission of the crime would have been impossible, his furnishing of the transportation and the money necessary for the purchase of more cigarettes than he wanted for himself, his statement to the accused that he should keep the excess cigarettes, and his subsequent delivery of the accused to an area prearranged with the Office of Special Investigations agents who subsequently made the arrest. Certainly the issue was raised as to whether Nelson acted as a Government agent for the purposes of entrapping the accused and making possible his early apprehension thereafter.

It has been held that a conviction procured by entrapment is in violation of the due process provision of the Fifth Amendment. Banks v United States, 249 F 2d 672 (CA 9th Cir) (1957). It has also been held that where the defendant obtained narcotics at the request of a Government informer, under surveillance of narcotics officers and acting at their direction, and where the defendant made no profit thereby, defendant was merely the messenger of the seller and could not be convicted of selling narcotics. Adams

v United States, 220 F 2d 297 (CA 5th Cir) (1955).

In United States v McGlenn, 8 USCMA 286, 24 CMR 96, we reversed accused's conviction of wrongfully possessing and using marijuana where he was induced to do so by a narcotics addict turned Criminal Investigation Detachment informer. In so doing we said that:

" . . . when a showing of inducement by a Government agent is made, the prosecution must prove that its agents acted under a reasonable belief that the law was being violated by the accused."

Under the facts of this case the question of whether the Government could have sustained this burden was pertinent. In Sherman v United States, 356 US 369, the Supreme Court concluded from the evidence that entrapment was established as a matter of law where the accused was persuaded to supply a Government informer with narcotics. Mr. Chief Justice Warren said in the majority opinion:

" . . . In his testimony the federal agent in charge of the case admitted that he never bothered to question Kalchinian about the way he had made contact with petitioner. The Government cannot make such use of an informer and then claim disassociation through ignorance.

•  •  •  •  •

" . . . Thus the Government plays on the weaknesses of an innocent party and beguiles him into committing crimes which he otherwise would not have attempted. Law enforcement does not require methods such as this."

See also United States v Wolf, 9 USCMA 137, 25 CMR 399. We again note that under the facts of the present case whether or not Nelson acted as a Government agent was a question which should have been determined by the court-martial under proper instructions. And we stress once more that if Nelson had not procured accused's release from restriction, he could not have committed the crime of which he was accused. As Chief Judge Quinn said in the con-

**604**

curring opinion of United States v Tamas, 6 USCMA 502, 20 CMR 218:

"However, I think it appropriate to call the attention of law enforcement officers to Judge Sanborn's statement in Butts v United States, 273 F 35, 38 (CA 8th Cir) (1921) (cited with approval by the United States Supreme Court in Sorrells v United States, 287 US 435, 444, 77 L ed 413, 53 S Ct 210), 'The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it.' A natural corollary to that statement is that law enforcement officers should endeavor to prevent a lesser offense from developing into a major crime."

As to the other aspects of the defense counsel's representation, or nonrepresentation, of the accused during trial, it is of course true that the effectiveness of a defense cannot be measured solely by the outcome of the trial. United States v Malfetti, 125 F Supp 27 (D NJ) (1954). In United States v Hunter, 2 USCMA 37, 6 CMR 37, this Court said:

"After appointment of counsel, as required by the Code, an accused, if he contends his rights have not been fully protected, must reasonably show that the proceedings by which he was convicted were so erroneous as to constitute a ridiculous and empty gesture, or were so tainted with negligence or wrongful motives on the part of his counsel as to manifest a complete absence of judicial character."

By that broad language we did not intend to be understood as saying that the highest degree of professional competency is not to be expected of an appointed defense counsel. In Hendrickson v Overlade, 131 F Supp 561 (ND Ind) (1955), the court drew a distinction between representation of court appointed counsel and employed counsel of a defendant's own choice where the question of due process was concerned. In Johnson v United States, 110 F 2d

562 (CA DC Cir) (1940), the court pointed out:

" . . . It would be a strange system of law which first assigned inexperienced or negligent counsel in a capital case and then made counsel's neglect a ground for refusing a new trial. The right to counsel is not formal, but substantial."

In Diggs v Welch, 148 F 2d 667 (CA DC Cir) (1945), it was stated:

" . . . we think absence of effective representation by counsel must be strictly construed. It must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and to correct it."

In Glasser v United States, 315 US 60, 62 S Ct 457, 86 L ed 680, in reversing a conviction because the attorney simultaneously represented conflicting interests, the Supreme Court said:

" . . . The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

In Wilcoxon v Aldredge, 192 Ga 634, 15 SE 2d 873 (1941), the Supreme Court of Georgia said:

" . . . In Williams v State, 192 Ga 247, 257, 15 SE 2d 219, 225, we recognized the rule to be that 'if appointed attorneys are so ignorant, negligent, or unfaithful that the accused was virtually unrepresented, or did not in any real or substantial sense have the aid of counsel, he would be deprived of a fundamental constitutional right, and if convicted might successfully complain that he had been denied due process of law.' "

In State v Williams, 9 Houst (Del) 508, 18 Atl 949, 951 (1890), the court described the role of an appointed defense counsel as:

" . . . He is thus a sort of substitute for themselves, and his omissions should be viewed by the court, in the exercise of its discretion in granting or refusing new trials, more favorably than if he had been employed by the prisoner himself for his defense."

In People v Morris, 121 NE 2d 810, 3 Ill 2d 437, the degree of expertise expected of a public defender is stressed. Other cases are cited therein in which reversals were based at least in part upon incompetency of trial counsel.

In United States v Hunter, supra, we found that there was no showing of an incompetent defense. We found to like effect in United States v Bigger, 2 USCMA 297, 8 CMR 97, and noted from our examination of the record that:

" . . . defense counsel participated intelligently; followed a strategy of establishing a defense of an alibi; produced character evidence, beneficial to the accused; exploited the inconsistencies in testimony of witnesses for the Government; and produced evidence that the accused did not fire his weapon."

In United States v Parker, 6 USCMA 75, 19 CMR 201, where defense counsel made no attempt to examine any court member on *voir dire*, exercised no peremptory challenge, made no substantial objections on the taking of testimony, offered no testimony touching upon the merits, submitted no instructions, and took no exceptions to those given, we found an inadequate representation of accused. There, this Court said:

" . . . we repeat, doing nothing is not evidence of skillful representation. When we fairly evaluate counsel's efforts from the four corners of the record, we wonder how any counsel could do less for his client."

Mitchell v United States, decided by the United States Court of Appeals for the District of Columbia Circuit on June 12, 1958, does not influence our result in the present case. There the question of competency of counsel was raised by collateral attack rather than directly by appellate process.

Under the facts of this case we hold that the defense counsel's conclusion, as set out in his affidavit before this Court that "a defense of entrapment would be frivolous in the extreme," indicates at least such negligence as to

constitute ineffective assistance and therefore a denial of due process. His inactivity at trial buttresses this conclusion.

The board of review decision is reversed. The findings of guilt and the sentence are set aside. A rehearing may be ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

This is simply a case of this Court, without the benefit of personal contact with the characters in the ▇▇▇▇▇▇ courtroom drama, substituting its judgment of trial tactics for those of defense counsel. To do that is to grant the accused a trial on the merits at this level, which relief is not in accord with recognized appellate practice and which, in the end, will result in giving to every accused the privilege of opening a Pandora's box of accusations against his counsel. In the case at bar, a cursory reading of the entire file fairly establishes that the accused had his day in court with unsuccessful results and that on appeal his only hope is to challenge the judgment of his defense counsel. I am not disposed to encourage that strategy.

The issue is presented to us by post-trial affidavits and counteraffidavits, but the crux of accused's contention is that he was denied due process of law because his defense counsel failed to raise an issue of illegal entrapment. It may well be that if through negligence, gross indifference to the rights of the accused or dereliction of duty on the part of this defense counsel, the trial was nothing but a hollow gesture, the accused should be afforded relief by us, but no such situation is presented by this record. Defense counsel had some choice in his method of defense and he did not misrepresent his client merely because he neither won a victory nor selected what later may appear to have been a better choice. In that connection it must be remembered that he had a dual responsibility. He must avoid assisting the Government in proving guilt and he must not produce evidence which would increase the punishment if a conviction were returned. And being faced with the testimony of the witnesses who had given pretrial statements, including a confession by the accused, he had good reasons for adopting the tactics he employed.

It is an easy task to second guess a lawyer who loses, but some consideration must be given by appellate courts to the probability that he is in possession of information which never appears in the record. Furthermore, he must assess the credibility of the witnesses, including his client, and the record is usually stone cold on their trustworthiness. While obviously I do not purport to know all the facts in possession of defense counsel, I do find in the file some available evidence to support his method of defense. First, in order for the accused to make use of the defense of entrapment, he had to get into the record some evidence to support his claim. I find very little of a credible variety. Second, he must admit possession of the contraband. That admission alone might have sealed his doom. Third, he had to meet the proof that prior to the instant offense he was suspected of committing crimes involving habit-forming drugs. That would be most difficult in view of the fact that he had executed a pretrial statement in which he admitted prior use and possession of narcotics. Fourth, he had admitted his complicity in the present offense and he was faced with denying his own statement. Fifth, his pretrial statement disclosed that the pusher knew and would deal only with him. If he was an innocent victim of entrapment, he had to neutralize the inference arising from his easy access to the source of supply. Sixth, he was confronted with the necessity of rejecting his own statement that he retained for his own purposes five of the marijuana cigarettes purchased.

I have mentioned the foregoing evidentiary items only for the purpose of showing that establishing illegal entrapment was a difficult task. Counsel was not representing an innocent accused who was ensnared into committing a crime by the machinations of Government agents. His client was

quite familiar with the trade and knew the ways and means of making clandestine purchases. True, the agents made his path easier but when the record as augmented by accused's pretrial statement is considered, he was just awaiting a chance to meet up with "Shakey," the peddler from whom he had purchased other marijuana cigarettes when the informers consulted with him. Merely easing the way for one intent on sinning does not amount to illegal entrapment and that is about all we have here. I, therefore, question the assertion that by concluding not to develop the issue defense counsel violated his duty and rendered the trial a farce and mockery of justice. Particularly is that true when, as here, counsel had five years of his client's life depending on his choice and much unfavorable evidence would reach the court if he chose that line of defense.

Going one step further and assuming arguendo that an issue of entrapment might have been raised, failure to adopt that course does not of itself justify the charge of inadequate or ineffective representation. We have criticized defense counsel for lack of attention to the sentencing facet of a trial, and this counsel had a duty not to raise questionable defenses which might tend to increase the punishment. In his affidavit, he avers that a defense of entrapment would have been frivolous, and he was seeking to minimize the punishment by keeping damaging evidence which was in accused's pretrial statement from the court. He succeeded in doing the latter, and so now he finds himself in the uncomfortable position of being subject to censure for improper representation. There are just too many imponderables which may have influenced his decision for me to join in the condemnation. But, in addition, defense lawyers are fallible, and an accused is not guaranteed a trial free from mistakes. At best, the law only guarantees him the considered judgment of a qualified lawyer, and in this instance he was furnished with all the law requires.

I would affirm the decision of the board of review.