UNITED STATES, Appellee,

v.

George K. MASON, Senior Airman, U. S.
Air Force, Appellant.

No. 41104/AF.
ACM S24993.

U. S. Court of Military Appeals.

Sept. 20, 1982.

For Appellant: *Captain Douglas H. Kohrt* (argued); *Colonel George R. Stevens* (on brief).

For Appellee: *Captain George D. Cato* (argued); *Colonel James P. Porter, Major Robert T. Mounts* (on brief).

OPINION OF THE COURT

COOK, Judge:

Appellant was convicted, contrary to his plea, of a single specification of sale of lysergic acid diethylamide (LSD), a violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. He was sentenced by a special court-martial comprised of members to a bad-conduct discharge, confinement at hard labor for 3 months, and reduction to the grade of E–1. The convening authority approved the sentence and the United States Air Force Court of Military Review affirmed in an unpublished opinion. We granted review to determine whether appellant was prejudiced by the military judge's refusal to permit appellant to present certain evidence on the defense of "agency" and by the judge's consequent failure to instruct the court members thereon. 12 M.J. 50 (1981).

I

The testimony presented by the prosecution and defense at trial produced radically

differing versions of the facts. The Government's key witness, an airman named McGlone, had been previously convicted of the use and sale of marihuana. Prior to his own trial and for over a year thereafter, McGlone operated as an informant for the Air Force Office of Special Investigations (OSI), McGlone testified that, on September 17, 1979, toward the end of his service as an informant, he called appellant to see "if he knew of anyone that had any 'good smoke' referring to marijuana." Reportedly, appellant replied "that he had some 'blotter acid' or LSD" and agreed to sell a quantity to McGlone. An OSI-organized attempt to buy LSD from appellant the next day had to be aborted when, contrary to expectations, appellant was not home. On the evening of September 19, 1979, McGlone again telephoned appellant and arranged to purchase LSD on the 20th. As before, OSI agents strip-searched McGlone, searched his automobile, and provided him with sufficient funds to make the purchase. This time the operation was a success; McGlone entered appellant's apartment, placed $20 on a table, and received a quantity of LSD from appellant.

On cross-examination, McGlone was asked, "Do you know a civilian by the name of Rivers?" McGlone denied that he did and denied ever giving such person any money for drugs. McGlone did admit that he had once seen appellant driving with a long-haired male civilian who he assumed could have been appellant's drug source.

A series of Air Force OSI agents corroborated McGlone's testimony with respect to the two purchase attempts.

Appellant, in his testimony, conceded transferring the LSD to McGlone. He explained that, several days prior to the transfer, he happened to be giving Rivers a ride in his car when he stopped by McGlone's house to congratulate him on his new child. While there, according to appellant, McGlone negotiated a drug purchase with Rivers and paid Rivers $20 in advance. Later, Rivers gave appellant a plastic vial, which appellant understood was for McGlone. Thus, on the 20th of September when McGlone came to appellant's apartment, appellant had the drugs on hand and simply handed them over to McGlone, no money being exchanged.

Generally, appellant sought to portray himself as a mere conduit, facilitating, but without having any interest in, the exchange between two of his acquaintances. When asked by his counsel: "What was your understanding of your role when [sic] this transaction with the little green vial?," appellant replied:

Well basically, sir, I had nothing to do with it except to transfer it from James Rivers to Airman McGlone. I had nothing to gain by it or no personal interest in it except *I was helping a couple of friends out.*

(Emphasis added).

During his direct examination of appellant, at which time appellant was relating the circumstances of the alleged meeting between McGlone, Rivers, and appellant, trial defense counsel asked appellant: "[W]hat if anything was said by McGlone to Rivers?," simultaneously explaining to the military judge that he was "not offering" the testimony "for the truth of what was said," but "merely to explain what the witness saw happen at the time." Trial counsel promptly objected on the grounds of hearsay and the military judge, without inquiry or explanation, sustained the objection. Trial defense counsel made no protestation regarding the adverse ruling, failed to proffer the substance of the expected testimony, and made no attempt to explain its relevance.

Appellant's wife, in her testimony, denied observing any drug transaction, though she was home at the time of McGlone's visit.

After the prosecution and the defense had rested on the merits, trial defense counsel requested an instruction on the defense of agency. The military judge expressed doubt that there was "a scintilla of evidence that this accused was acting as—at the direction of McGlone." Trial defense counsel responded that he had attempted to present such evidence, but that the military judge himself had precluded its introduction

by sustaining trial counsel's hearsay objection. Trial defense counsel then explained that he was trying to establish that McGlone had asked appellant to pick up the drugs from Rivers because appellant knew where Rivers lived. This accommodation of McGlone, trial defense counsel contended, was appellant's sole motivation for participating in the transaction and entitled appellant to an agency instruction. The military judge disagreed and no such instruction was provided. Neither trial defense counsel nor the military judge suggested that the case be reopened at that point so that additional testimony might be taken.

## II

The defense of agency is nowhere to be found in either the Uniform Code of Military Justice or the Manual for Courts-Martial.[1] Nevertheless, following then-emerging federal precedent, we recognized the "well-established principle of law that one who acts in a given transaction solely as a procuring agent for a person is not a seller to that person." *United States v. Fruscella*, 21 U.S.C.M.A. 26, 27, 44 C.M.R. 80, 81 (1971). *See also United States v. Henry*, 23 U.S.C.M.A. 70, 48 C.M.R. 541 (1974); *United States v. Suter*, 21 U.S.C.M.A. 510, 45 C.M.R. 284 (1972); *United States v. Horne*, 9 U.S.C.M.A. 601, 26 C.M.R. 381 (1958). Presumably, the agency defense—that "curious mingling of commercial law and criminal law"[2]—is derived from the notion that the agent acts on behalf of his principal. *See generally* 3 Am.Jur.2d Agency § 68 *et seq.* In other words, just as a purchaser of contraband is not ordinarily chargeable with its sale, as either an aider and abettor

or a co-conspirator with the seller, neither is the agent who stands in the buyer's shoes liable for the sale.

With the passage of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Congress effectively eliminated the agency defense in federal drug prosecutions by rescinding the statutes which had proscribed the *sale* of illegal drugs. In their place, statutes were enacted making it "unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Military practice, by contrast, perpetuates the agency legacy since certain drug transactions are still routinely charged as sales.

■ Turning to the instant case, government counsel now concede that the military judge erred in precluding appellant's testimony regarding McGlone's[3] statements at the alleged meeting with appellant and Rivers, and we agree. It is clear to us, as trial defense counsel noted at trial, that the excluded testimony was not "offered ... to prove the truth of the matters" asserted; thus it was not hearsay. Para. 139*a*, Manual for Courts-Martial, United States, 1969 (Revised edition). Plainly trial defense counsel was not seeking to prove that appellant really knew where Rivers lived or that the participants were in fact "close to it."[4] Rather, he was attempting to demonstrate appellant's alleged reason for becoming involved in the transaction (i.e., to accommodate McGlone) by showing what prompted his participation. In other words, the mere fact that the statement was made, if indeed it was, was itself relevant. Paras. 139*b* and 142*d*, Manual, *supra*.

1. Manual for Courts-Martial, United States, 1969 (Revised edition).

2. Lamb, *The Procuring-Agent Theory as a Defense in Drug-Sale Prosecutions*, 27 JAG J. 99 (1972).

3. Admittedly, trial defense counsel's proffer is slightly at variance with his original question. Initially he asked appellant: "[W]hat if anything was said by McGlone to *Rivers*?" (Emphasis added.) Subsequently, trial defense counsel argued to the military judge: "I offered to try to get evidence before the court that

McGlone asked the *accused* to pick ... [the drugs] up from Rivers because he knew where Rivers lived and we were close to it." (Emphasis added.) However, we do not find this discrepancy significant. We must assume that trial defense counsel's successive questions would have developed the proffered information, and we view the military judge's ruling as broad enough to cut off the entire line of questioning.

4. *See* n. 3, *supra*.

■ Despite conceding error, the Government argues that appellant was not prejudiced by the adverse ruling. Under the Government's theory, no amount of evidence that appellant was acting on behalf of the purchaser could have sufficed to raise the defense of agency as long as there was also evidence *from appellant's own mouth* that he was "helping out" the vendor as well. This approach ignores the fact that it is the function of the fact-finder—here the court members—to resolve conflicting testimony. Whenever there is (or here presumably would have been) some evidence supporting a defense, the military judge is obliged to instruct the members thereon—the more so where requested. *See United States v. Graves,* 1 M.J. 50 (C.M.A.1975); *see also United States v. Salley,* 9 M.J. 189 (C.M.A.1980).

Further, we do not consider appellant's seemingly casual expression of "helping a couple of friends out" as being determinative of the legal issue. Certainly the court members could consider such testimony along with all the other evidence in the case in reaching their decision. However, it is more than conceivable that one might help another commercially without becoming his agent and one who purchases from a friend does not ordinarily become his agent. Thus, the fact that some evidence was presented which militated against the agency defense did not terminate appellant's right to present his theory of the case to the court members.

■ Had, indeed, the evidence been substantially as proffered,[5] appellant would have been entitled to the requested instruction. *Cf. United States v. Steinruck,* 11 M.J. 322 (C.M.A.1981). Naturally, we express no opinion as to the likelihood of success of appellant's trial tactics. However, we believe he was unduly hindered in the presentation of his case, to the extent that effectively he was denied his right to a trial by court-martial. The prejudice is apparent.

Therefore, the decision of the United States Air Force Court of Military Review is reversed; the findings and sentence are set aside; the record of trial is returned to the Judge Advocate General of the Air Force; and a rehearing may be ordered.

Chief Judge EVERETT and Judge FLETCHER concur.

---

5. As noted, trial defense counsel failed initially to proffer the substance of the excluded testimony to the military judge. Under the new military rules of evidence, not yet in effect at the time of appellant's trial, a defense counsel is required to make known to the military judge by an offer of proof, unless it is apparent from the context, the substance of the evidence sought to be introduced, in order to preserve for appeal the question of the propriety of a ruling excluding the evidence. Mil.R.Evid. 103(a)(2). At the time of appellant's trial, no similar requirement existed. *See* para. 154*c,* Manual, *supra.* Thus, trial defense counsel's tender by questioning, accompanied by the specific ground for admissibility, *i.e.,* that the testimony was not offered for the truth of the matters asserted, was sufficient to preserve the issue for appeal. *See United States v. Brown,* 10 U.S.C.M.A. 482, 28 C.M.R. 48 (1959); *United States v. Dupree,* 1 U.S.C.M.A. 665, 5 C.M.R. 93 (1952). We do not decide today whether, as in the instant case, an untimely proffer of evidence, whether or not accompanied by a request to reopen the case, is sufficient to preserve an issue for appeal. Suffice it to say that Mil.R.Evid. 103 does not necessarily provide the panacea some practitioners might anticipate because the failure of a trial defense counsel sufficiently to preserve issues for appeal may well raise the much more troubling and difficult-to-resolve spectre of inadequacy of representation. Counsel and military judges alike will be well-advised to minimize, to the extent practicable, such issues.