UNITED STATES, Appellee,

v.

Private E–1 Charles E. MEANS, Junior,
587–19–4076, United States
Army, Appellant.

CM 445986.

U.S. Army Court of Military Review.

29 March 1985.

Lieutenant Colonel Arthur L. Hunt, JAGC, Major Stephen R. Dooley, JAGC, and Captain Karen S. Davis, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, and Captain Thomas J. Benjamin, JAGC, were on the pleadings for appellee.

Before MARDEN, PAULEY, and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Contrary to his pleas, appellant was convicted by a court-martial composed of members of committing consensual heterosexu-

al sodomy and other indecent, lewd and lascivious conduct[1] in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 (1984) (UCMJ). The court sentenced him to a bad-conduct discharge, confinement at hard labor for two years and three months, forfeiture of all pay and allowances and reduction to Private E-1. The convening authority approved the sentence but suspended for one year the confinement term in excess of two years.

I.

The prosecution's case rested almost entirely on the testimony of Janell M., a 27-year-old former servicewoman who admitted she frequented the enlisted clubs on Fort Lewis, Washington. She testified that although she went to the clubs mainly to dance, she was "not one to turn down a free drink if one's offered." Nor was she averse to having sexual relations with men she met at the clubs. One such individual was Private Dennis Wilson, a resident of appellant's barracks. Their relationship blossomed when Janell met Wilson at the Madigan Club on 12 February 1984. Six days later, she brought Wilson to her home where she had sexual relations with him. Janell next visited him at his barracks room at 2030 hours on 25 February with the intention of spending the night with him. Unfortunately for her, Wilson had other, more libertine ideas.

Janell related in vivid and lurid detail the following incident giving rise to the charges. At about 2200 hours, Wilson invited Private First Class Early into his room so he could have sexual relations with Janell. Early first attempted to seduce her but was unsuccessful because Janell objected on the grounds he was not her boyfriend. Only after Wilson threatened to beat her if she did not have sex with Early did she succumb to his advances. For the next hour, Janell engaged in coitus, oral sodomy and anal intercourse with both

---

1. The specification alleged that appellant wrongfully had sexual intercourse with a woman in the presence of two other soldiers.

men. She said she did not offer resistance or scream for help because she thought those actions would have been futile. At 2300 hours, the appellant entered the room, apparently, at Wilson's invitation. Wilson ordered Janell to "give him what he wants"; whereupon, she performed fellatio on the appellant while Early engaged her in anal intercourse. Then she performed fellatio on Early while appellant had vaginal intercourse with her. Appellant departed the room while Wilson and Early continued their licentious activities. Later, they also left, ostensibly to go to one of the clubs, leaving Janell to fend for herself. When she asked Wilson how she was supposed to get home, he gave her a dollar for bus fare apparently oblivious to the fact that no buses were operating at that hour. Janell testified that she was outraged by the soldiers' behavior and admitted thinking to herself, "they were not going to get away with this." At about 0030 hours, 26 February, the unit charge of quarters found her crying outside the barracks. She told him she had been sexually assaulted by Wilson, Early and the appellant.

The appellant took the stand in his own defense and testified quite differently. He denied entering Wilson's room that evening or having sexual relations with Janell. He learned that a woman was present in Wilson's room when he loaned Wilson his television and observed the woman and Early in the room. He claimed he spent the evening bowling and then went to sleep. He was awakened by Wilson arguing with a woman in the hall outside his room over a ride home.

Three other witnesses were called by the defense—the charge of quarters (CQ), the staff duty noncommissioned officer (SDNCO) and the on-call SDNCO—to relate their observations of Janell immediately after the incident. They testified that Janell never claimed she was raped, sexually assaulted or even that she had engaged in sexual relations with anyone. Nor did she accuse the appellant and his cohorts of participating in the orgiastic activities she had enumerated during her in-court testimony. They did, however, corroborate that Janell appeared emotionally distraught and had been crying. On cross-examination, the CQ admitted he had reported Janell's claim of having been sexually assaulted by Wilson, Early and appellant in the unit log book. The defense also introduced a report of Janell's medical examination setting forth her physical condition on the 26th of February. The report indicated that she had engaged in intercourse and oral sodomy, had some bruises on her breast, thighs and knee, but was otherwise in good health.

## II.

During his cross-examination of Janell, the trial defense counsel first reviewed her testimony on direct wherein she reported being raped and obtained her admission that she desired to exact vengeance upon her assailants. Then he asked her if she had been raped before. Trial counsel objected to the question as irrelevant and humiliating to the witness.[2] The military judge requested the defense counsel to explain why he should be allowed to continue the line of questioning.[3] The defense counsel initially stated that he thought the question was relevant because it "goes to the motive and the witness' credibility." Subsequently, at an out-of-court session, he amplified his initial remarks as follows:

> DC: Yes, Your Honor, that there is a motive to lie, there is a motive to make up stories. I certainly do not and I do

---

**2.** Upon inquiry by the military judge, the trial counsel conceded that he was not basing his objection strictly on Military Rule of Evidence (M.R.E.) 412 since that rule applied only to cases involving nonconsensual sex offenses. *See United States v. Dorsey*, 16 M.J. 1 (C.M.A. 1983). However, it is apparent he was relying by analogy on that aspect of the rule purporting to bar questions that tend to degrade a witness. *See also* M.R.E. 303.

**3.** The military judge properly followed the procedure suggested by paragraph 53g, Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM), and for hearing objections. *See United States v. Salisbury*, 50 C.M.R. 175 (A.C.M. R.1975).

not humiliate witnesses, Your Honor. I'm merely trying to get some objective facts out here as to what this woman's state of mind was at that evening, in fact what exactly went on, and I think this is very relevant, and I think it's Constitutionally required for me to ask these questions.

MJ: Well, I can possibly see the relevance of it if consent were an issue. I fail to see the relevance of this line of questioning in the setting of this particular case.

DC: Very well, Your Honor.

MJ: I'll prohibit any questioning in this aspect concerning other sexual misconduct of the alleged victim.

### III.

■ The issue presented for resolution, as framed by the appellant, is whether the military judge abused his discretion by not allowing appellant's trial defense counsel to cross-examine the Government's principal witness, the victim of the offenses, about previous instances wherein she claimed, perhaps falsely, that she was raped. The foundation for appellant's contention is that the judge erred in failing to recognize that his counsel's incipient questions to the witness would have been permissible impeachment because they would have tended to uncover either her character for untruthfulness or her motive to falsely implicate the appellant. *See* M.R.E. 608(b) and (c).[4] In opposition, the Government asserts that the record does not demonstrate precisely what appellant's counsel was attempting to accomplish when he embarked on his controversial cross-examination. Under the Government's theory, counsel's question purported to uncover prior instances of sexual misconduct solely to degrade the witness and was therefore, irrelevant and improper. M.R.E. 303 and 402. Alternatively, the Government ar-

gues the question was ambiguous which, when combined with the failure of the defense counsel to proffer the substance of the evidence he wished to adduce, amounts to a waiver of any error the judge may have made. *See* M.R.E. 103(a)(2).

We find the Government's position persuasive. While the evidence the trial defense counsel wished to develop might have been admissible for several legitimate purposes, the information available to the judge did not sufficiently indicate counsel's objective because counsel did not bear his burden of putting the military judge on notice of either his specific theory of admissibility or the evidence he intended to elicit. A prior instance of rape does not, in and of itself, have any bearing on a rape victim's credibility. Accordingly, we hold that the military judge did not abuse his discretion by ruling against the appellant.

■ The question of whether a military judge abused his discretion in applying the rules of evidence should be answered in the context of the events that transpired at trial. *United States v. Strong,* 17 M.J. 263 (C.M.A.1984). In this respect, the manner in which and the substance of a counsel's presentation of his client's case to the court will have significance in our assessment of the propriety of a trial judge's ruling. Military Rule of Evidence 103(a)(2) recognizes the role played by counsel for the Government and the accused in the process by which a trial judge applies evidentiary rules to those issues presented to him for disposition. It states:

Rule 103. Rulings on Evidence

(a) *Effect of erroneous ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless the ruling materially prejudices a substantial right of a party, and

. . . .

---

**4.** Military Rule of Evidence 608(b) provides, in relevant part, that specific instances of conduct not amounting to a conviction and probative of a witness' character for truthfulness may be inquired into on cross-examination although they may not be proved by extrinsic evidence.

Military Rule of Evidence 608(c) provides that a witness' bias, prejudice or motive to misrepresent may be shown to impeach the witness either by examination or by evidence otherwise adduced.

(2) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the military judge by offer or was apparent from the context within which questions were asked.

■ The rule has been held applicable in situations where counsel have sought to admit evidence during their case-in-chief, *United States v. Piatt,* 17 M.J. 442 (C.M.A. 1984); *United States v. Fitzgerald,* 19 M.J. 695 (A.C.M.R.1984); while attempting to impeach a witness for the opposing party, *United States v. Wright,* 13 M.J. 824 (A.C. M.R.), *pet. denied,* 14 M.J. 230 (C.M.A. 1982); and during a hearing on a motion *in limine,* to determine whether certain proffered evidence is admissible, *United States v. Cofield,* 11 M.J. 422 (C.M.A.1981).[5] While the primary purpose of the rule is to document and preserve issues for appellate review, *see United States v. Mason,* 14 M.J. 92, 95, n. 5 (C.M.A.1982); *United States v. Wright, supra,* we believe there are other cogent reasons to justify its application. Among other things, it enables the trial judge to make a more informed determination of the issues at trial, thereby enhancing the integrity of the military criminal justice system. *United States v. Heflin,* 1 M.J. 131 (C.M.A.1975); *United States v. Brassell and Pinkney,* 47 C.M.R. 305 (A.C.M.R.1973), *affirmed sub nom. United States v. Pinkney,* 48 C.M.R. 219 (C.M.A.1974). Furthermore, it minimizes frivolous claims of inadequate representation. *See United States v. Mason, supra.* Also, it facilitates testing for prejudice.

*Luce v. United States, supra* note 5; Article 59(a), UCMJ, 10 U.S.C. § 859(a). These ends are consistent with the practice followed in the federal courts, and with sound judicial administration. *See* Analysis of M.R.E. 103(a).

Even before implementation of the Military Rules of Evidence, military appellate courts were not averse to applying a strict waiver rule as a matter of practice. *See* para. 154c, MCM. Thus, although an appellant would not automatically be denied relief if his counsel failed to specify reasons or cite certain legal authority in support of a favorable evidentiary ruling from the trial judge, relief was less likely because appellant could not easily establish on appeal that the judge was solely responsible for the error. *See United States v. Young,* 49 C.M.R. 133 (A.F.C.M.R.1974).[6] We recognize that a "trial judge is more than a mere referee, ... [who] is required to assure that the accused receives a fair trial." *United States v. Graves,* 1 M.J. 50 (C.M.A.1975). However, we do not believe such responsibility requires him to be clairvoyant.

■ In sum, we believe the foregoing authorities make it incumbent upon us in our review of the judge's ruling in this case to permit him considerable latitude in exercising his discretion.[7] At the same time, we believe it proper that we require the trial defense counsel, in order to preserve his appeal from that ruling, to present appellant's position with perspicacity and precision. The record in this case demonstrates that trial defense counsel failed to

---

**5.** *"In limine"* means "[o]n or at the threshhold; at the very beginning, preliminarily." Black's Law Dictionary 708 (rev. 5th ed. 1979). We note that the holding in *United States v. Cofield* and its progeny (*United States v. Mason, infra,* and *United States v. Wright, supra*) that allows an accused who has not testified to preserve his appeal from an adverse evidentiary ruling of a motion *in limine* has been overruled by the United States Supreme Court in *Luce v. United States,* —— U.S. ——, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

**6.** In *Young,* a defense "offer of proof" representing that two requested witnesses, if called, would testify in a certain manner concerning

the court selection process, was held to amount to no more than a "mere declaration of the wholly unsubstantiated 'hopes' of the defense." In upholding the trial judge's refusal to grant the defense's request that the witnesses appear, the court declined "to equate an offer of 'hopes' to an offer of proof."

**7.** *See also, United States v. Abel,* —— U.S. ——, 105 S.Ct. 465, 470, 83 L.Ed.2d 450 (1984), wherein the United States Supreme Court overturned a Court of Appeals decision by stating, "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules."

meet his burden of preserving the issue for appeal.

■ We will assume without deciding that appellant's counsel was attempting to establish Janell's untruthful character and her motive to lie by showing she had falsely claimed on other occasions that she was raped and that this would have been proper impeachment under M.R.E. 608(b) or (c). *See United States v. Dorsey, supra* note 2; *United States v. Banker,* 15 M.J. 207 (C.M.A.1983); *United States v. Ferguson,* 14 M.J. 840 (A.C.M.R.1982). The plain language of M.R.E. 103(a)(2), provides two ways in which counsel's intention could have been revealed to the military judge; that is, expressly, by counsel's statement of "the substance of the evidence"; or implicitly, by becoming "apparent from the context" of the proceedings in which the issue was litigated. Using either method, we find that the trial judge was not effectively apprised of the defense counsel's intention under the circumstances of this case. At no time did counsel overtly state that the witness had a history of falsely claiming she was raped. While he did suggest that he wanted to establish her motive to lie or make up stories, he did so in general terms only and without elaboration. We find no justifiable reason for him to have withheld clarifying information from the judge if he really intended to do what appellate counsel now assert he was prevented from doing.[8] Consequently, if the judge initially misconstrued counsel's intentions, it was because counsel induced it.

■ Moreover, an examination of the colloquy between both counsel and the judge reveals that all believed the trial defense counsel was concerned solely with the witness' prior sexual behavior. The

trial counsel's objection was directed toward preventing inquiry into the witness' unchastity and not her past, potentially false claims of rape. In sustaining the objection, the military judge limited his proscription of defense counsel's cross-examination only to the matter of the witness' sexual misconduct. Under the circumstances, if the defense counsel had wished to cross-examine the witness on a different ground, such as that suggested by appellate counsel, logic dictates he would have said so immediately after the judge made his ruling. This he did not do, thereby perpetuating the judge's earlier perception of counsel's intention to cross-examine the witness about prior sexual behavior.

Finally, we perceive another reason for applying waiver in this case. Our reading of the military judge's ruling leads us to conclude that appellant's defense counsel was not prevented from questioning the witness about previous rape claims had he desired to do so. Counsel could have continued his inquiry via a different, permissible series of questions. Moreover, he could have introduced extrinsic evidence from the witness' testimony at the Article 32 investigation to show she was biased. We recognize that his omissions may be attributable to either his inexperience or his tactics. We decline to speculate which, since neither reason warrants remedial action for inadequacy of representation. *See United States v. Wheeler,* 18 M.J. 823 (A.C.M.R.1984); *United States v. Gholston,* 15 M.J. 582 (A.C.M.R.), *pet. denied,* 16 M.J. 125 (C.M.A.1983).

■ In the past, this Court has not hesitated to grant an appellant relief from an erroneous, unchallenged evidentiary ruling amounting to plain error. *United States v. Robinson,* 16 M.J. 766 (A.C.M.R.1983).[9]

8. During the witness' testimony at the Article 32 investigation, she admitted to having claimed she was raped on five previous occasions, one of which supposedly involved multiple assailants. The Analysis to M.R.E. 608(b) states that "counsel should not, as a matter of ethics, attempt to elicit evidence of misconduct unless there is a reasonable basis for the question." Although counsel here had such a basis for inquiring into

the witness' prior rape claims, he failed to act on it.

9. In *Robinson,* we did not apply waiver primarily "because of the short time the Military Rules of Evidence have been in effect" which caused counsel and the judge to fail to recognize a critical issue.

Nor have we been unsympathetic to the prayers of individuals disadvantaged by overbearing trial judges and inexperienced, but not incompetent, counsel. *United States v. McMillion,* 16 M.J. 658 (A.C.M.R. 1983). While our decisions in those cases are illustrative of measures we have taken partly to facilitate the transition to the Military Rules of Evidence and the recently-promulgated Manual for Courts-Martial, United States, 1984, they are poor substitutes for thorough research and forceful advocacy. The best time for a defense counsel to protect his client is at the trial level. *Cf. United States v. Boatner,* 43 C.M.R. 216 (C.M.A.1971). One of the ways to accomplish this is by raising objections and motions in a timely and accurate manner. We have recommended a procedure for doing this in *United States v. McMillion, supra,* and *United States v. Salisbury, supra* note 3, and commend it to counsel's use.

The military justice system is in a continual state of evolution. The trial defense bar has structurally and administratively become an independent entity.[10] This development represents a fundamental change in policy which we believe has transformed an excessively paternalistic system for litigating criminal cases into a truly adversarial one. More than before, defense counsel should be held responsible for their actions on behalf of their clients. This case is illustrative of the significance of the changes upon the justice system and its "serious impact upon the approach and basic philosophy which a defense counsel must apply to the representation of his client."[11]

The remaining assignments of error are without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge MARDEN and Judge PAULEY concur.

---

**10.** *See generally* Army Regulation 27–10, Legal Services, Military Justice, Chapter 6, 1 July 1984.

---

**11.** Peluso, Safe Passage Through the Manual for Courts-Martial, 1984, 16 The Advocate 90 (1984).