**UNITED STATES, Appellee,**

v.

**John J. POWER, Airman, U.S. Navy, Appellant.**

**No. 48092.
NMCM No. 83–1449.**

U.S. Court of Military Appeals.

Aug. 26, 1985.

For Appellant: *Lieutenant Thomas H. Dinkelacker*, JAGC, USNR (argued); *Lieutenant Commander William A. DeCicco*, JAGC, USN; *Lieutenant Louis F. Sadler*, JAGC, USN (on brief); *Lieutenant Commander Frederick N. Ottie*, JAGC, USN.

For Appellee: *Lieutenant Commander John B. Holt*, JAGC, USN (argued).

*Opinion of the Court*

EVERETT, Chief Judge.

A military judge sitting alone as a special court-martial tried appellant on a charge with six specifications alleging that, contrary to Article 1151 of U.S. Navy Regulations, he had wrongfully possessed, sold, and transferred 19 grams of marihuana on June 15, 1982; and wrongfully possessed,

sold, and transferred 14 grams of marihuana on June 23, 1982. Power defended on grounds of entrapment as to all the specifications and on agency as to the two specifications alleging wrongful sale. With minor substitutions as to the quantities of marihuana, the judge found him guilty as charged and sentenced him to a bad-conduct discharge, confinement at hard labor and forfeiture of $367 pay per month for 3 months, and reduction to pay grade E–1. The convening and supervisory authorities approved the findings and sentence; and the Court of Military Review affirmed. This Court granted review to determine whether the judge had properly disposed of the agency issue. 18 M.J. 8 (1984).

I

Petty Officer Frances Smith testified for the Government that she had been asked "to do some undercover work with NIS" (Naval Investigative Service). After she gave an affirmative answer to this request, an NIS agent arranged for her to be introduced to Power on June 10th. They "had lunch and talked for awhile," and Power invited her to attend a party at his home. She "was evasive and I didn't give him a yes or no answer." After lunch Petty Officer Smith gave appellant and another sailor who was with them a ride back to the base. Enroute she "asked both of them if anyone knew where I could score some dope." Appellant immediately answered in the affirmative.

On June 15th appellant and Smith had a telephone conversation during which he said that he "could get some" marihuana. When she asked the price, Power responded that "it was $70.00 for half an ounce and $130.00—$140.00 for an ounce." Later that day Petty Officer Smith met appellant at the Navy Exchange and purchased a half-ounce with funds supplied by NIS Special Agent Ronald Bright. In turn, she delivered the baggie of marihuana to Bright. Her next contact with appellant was on June 23rd when she purchased another half-ounce for $70. Immediately after the purchase was concluded—and upon a prearranged signal—NIS agents arrested appellant.

Upon cross-examination by defense counsel, Petty Officer Smith conceded that, when they first met, appellant had given her his phone number so that she could call him for directions to come to "the party at his house." Moreover, prior to the second transfer of marihuana appellant had invited her to "another party at his" home. When Smith had first asked about buying marihuana, she had stated that she "was looking for some all day and couldn't find any" and that she "needed some for my duty day, that it was hard to get through duty days without it." In her opinion, appellant appeared to have some other purpose besides simply selling her marihuana; and later in the trial, responding to a question by the military judge, Smith testified that she believed appellant "was trying to get a date with" her.

After the Government rested, the defense offered extensive evidence that none of the people with whom appellant had close contact had any reason to believe that he was involved in drug transactions. Testifying in his own behalf, appellant denied having sold marihuana or any other kind of drugs prior to the two occasions for which he was being tried. His explanation for the transactions with Petty Officer Smith was that he was "hoping to acccomplish a date from her and having her out to the house." He claimed that he had obtained the marihuana from a different individual on each occasion and had sold it to Smith at cost. Her payment to him was reimbursement for the amount he had spent in her behalf. She had indicated that she needed marihuana to "help her get through her work—her job at work. That she had some people coming from out of town that she wanted to impress." Power felt that he was "doing her a favor."

II

In *United States v. Mason*, 14 M.J. 92, 94 (C.M.A.1982), Judge Cook wrote for a unanimous Court as follows:

The defense of agency is nowhere to be found in either the Uniform Code of Military Justice or the Manual for Courts-Martial. Nevertheless, following then-emerging federal precedent, we recognized the "well-established principle of law that one who acts in a given transaction solely as a procuring agent for a person is not a seller to that person." *United States v. Fruscella*, 21 U.S.C. M.A. 26, 27, 44 C.M.R. 80, 81 (1971). *See also United States v. Henry*, 23 U.S.C. M.A. 70, 48 C.M.R. 541 (1974); *United States v. Suter*, 21 U.S.C.M.A. 510, 45 C.M.R. 284 (1972); *United States v. Horne*, 9 U.S.C.M.A. 601, 26 C.M.R. 381 (1958). Presumably, the agency defense—that "curious mingling of commercial law and criminal law"—is derived from the notion that the agent acts on behalf of his principal. *See generally* 3 Am.Jur.2d Agency § 68 *et seq.* In other words, just as a purchaser of contraband is not ordinarily chargeable with its sale, as either an aider and abettor or a co-conspirator with the seller, neither is the agent who stands in the buyer's shoes liable for the sale.

With the passage of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Congress effectively eliminated the agency defense in federal drug prosecutions by rescinding the statutes which had proscribed the *sale* of illegal drugs. In their place, statutes were enacted making it "unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Military practice, by contrast, perpetuates the agency legacy since certain drug transactions are still routinely charged as sales.

(Footnotes omitted.)

Recently, military law also has changed. In 1982, the President amended the Manual for Courts-Martial to authorize prosecutions under Article 134, 10 U.S.C. § 934, for distribution and possession of drugs— rather than sale, transfer, and possession. Exec.Order No. 12383, 47 Fed.Reg. 42,317.

Article 112a of the Uniform Code, 10 U.S.C. § 912a—which Congress enacted to deal specifically with controlled substances and which took effect on August 1, 1984— makes no reference to sales. Thus, the issue before us in this case would not have arisen with respect to recently committed drug offenses.

■ Appellate government counsel urges us to discard the agency defense entirely in cases where an accused is prosecuted for sale. However, since the agency issue lingers only in a few cases in which appellate review has been protracted, no pressing need exists at this late date to overrule well-established precedents, which for years have governed prosecutions for sale. Moreover, if the Government chooses to utilize the commercial-law concept of sale for the purpose of prosecuting drug offenses, there is little reason to give relief from the consequences of this choice by distorting the concept to embrace transactions which generally would not be viewed as sales.

■ Appellate government counsel also relies on judicial opinions stating that an agent must be acting only for the benefit of his principal and cannot receive any personal benefit. *See, e.g., United States v. Vanzandt*, 14 M.J. 332 (C.M.A.1982), and *United States v. Mason, supra*, and cases cited therein. In turn it is contended that, even if appellant testified truly and even if Petty Officer Smith's opinion about his motives was correct, he hoped to obtain a benefit for himself—namely, a date or close personal relationship with Smith.

If the agency defense is predicated on "commercial law," as implied in *Mason*, then some of this Court's earlier pronouncements may be too sweeping. Certainly many principals pay their agents to represent them in buying property; and the "finders fee" for such services is familiar in real-estate practice. Moreover, in some sense almost every agency involves an expectation of "benefit" by the agent; or else presumably he would not act in this capacity. However, the "benefit" may not

be a payment in cash but instead the intangible satisfaction of helping a friend or someone who is needy. If the "benefit" which precludes an agency defense is interpreted this broadly, then the defense disappears from the judicial scene because of the likelihood that the purported agent has benefited. Indeed, under such a sweeping interpretation of "benefit," most of the cases in which this Court has recognized the agency defense probably should have been decided differently.

Appellate government counsel contend that even if helping a friend buy drugs is consistent with the agency defense, giving help in order to establish a friendship—as appellant claimed he was doing—is inconsistent with agency. Obviously such subtle distinctions are difficult to apply. Was Petty Officer Smith a "friend" of appellant by the end of lunch and before she asked him where she could "score some dope," or was she only an intended friend? Little would be accomplished by our attempting to make these distinctions at a time when the agency defense will soon be obsolete.

### III

In cases involving trial by members, we have ruled repeatedly that if the evidence raises an issue of agency, then the members should be instructed thereon—regardless of the judge's own view as to the credibility of the defense evidence. *See, e.g., United States v. Vanzandt, supra* at 346–47. However, Power was tried by judge alone; and, as factfinder, the judge was not required to give credence to any witness. Since no special findings were requested or made, we are not informed as to what facts the judge believed to be true.

■ One of the judge's comments indicates that he may have construed the agency defense too narrowly.* However, that comment is not itself enough to raise the issue of law on which appellant now seeks to rely.

We hold that the granted issue should be resolved adversely to appellant.

### IV

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge COX concurs.

Judge FLETCHER did not participate.

---

* I find it almost impossible to believe that either of you bothered to argue agency or entrapment, with the state of the evidence in this case. The defense counsel told me that he was going to raise the issues of entrapment and agency and I listened to the accused's testimony and *I was just struck dumb because I did not hear any evidence indicating agency or entrapment.* However, having said that, I will also say that I'm sure that I would have found the accused guilty beyond reasonable doubt based on the prosecution's evidence. And, the accused did not put himself in any worse position by *testifying under oath and making a judicial confession."* (Emphasis added.)