UNITED STATES, Appellee,

v.

Specialist David R. HANKS, 468–64–2686, United States Army, Appellant.

ACMR 8802791.

U.S. Army Court of Military Review.

15 Dec. 1989.

---

For Appellant: Captain Thomas A. Sieg, JAGC, Captain Jeffrey J. Fleming, JAGC (on brief).

For Appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Martin D. Carpenter, JAGC, Major James L. Edwards, JAGC (on brief).

Before MYERS, JOHNSON, and NEURAUTER, Appellate Military Judges.

## OPINION OF THE COURT

NEURAUTER, Judge:

Pursuant to his pleas, appellant was convicted of conspiracy to distribute marijuana and distribution of marijuana in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 912a (1982 and Supp. IV 1986) [hereinafter UCMJ]. A panel of officers sentenced appellant to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to Private E1. In accordance with the terms of a pretrial agreement, the convening authority approved confinement for twenty-five months and the remainder of the adjudged sentence.

I

On appeal, appellant asserts that the military judge erred in allowing testimony pertaining to his involvement in the United States Army Alcohol and Drug Abuse Prevention and Control Program [hereinafter ADAPCP] during the sentencing phase of the trial. Captain (CPT) L, a government witness, testified as to the negative impact of appellant's offenses upon his unit. The military judge asked several questions of this witness, including the following:

MJ: But you do not know Specialist Hanks personally. You've only come into contact with him in the unit?

WIT: The only contact I've had with Specialist Hanks was during his enroll-

ment in the counseling center for his alcohol problem, during REHAB Team Meeting.

MJ: And that's the only encounter you've had with him?

WIT: Yes, sir.

The trial defense counsel did not object to CPT L's gratuitous remark. Later, during cross-examination of a defense witness, Staff Sergeant (SSG) M, in extenuation and mitigation, the following occurred:

TC: So you stated that you believe the accused can be rehabilitated. Is that correct?

WIT: Yes, sir.

TC: Are you aware that the accused has been through the alcohol education and rehabilitation program?

WIT: Yes, sir.

TC: And are you aware that the accused is drinking again?

WIT: Yes, sir.

DC: Your Honor, we'd object on the relevance to that. We are talking about rehabilitation to soldier back as a soldier. Talking about whether he may or may not have had a drinking problem is completely outside the scope of this case.

MJ: Overruled.

TC: What does that say to you about the accused's rehabilitative potential?

WIT: I know what you're getting at—

MJ: No! Sergeant, you just respond to the question and not what anybody's getting at. You're testifying here to assist the court members in arriving at an appropriate sentence, not to spar with any of the questions. Just answer to the best of your ability.

WIT: Okay, sir. Could you repeat the question again, sir?

TC: Sure. What is the fact that the accused has been through an alcohol rehabilitation program and is now, again, drinking alcohol say to you about his rehabilitative potential?

WIT: It doesn't show positive.

TC: Does it bring an element of doubt into your mind about the accused's ability to be rehabilitated?

WIT: As a soldier, no, sir.

TC: It doesn't bring any doubt in your mind whatsoever?

WIT: I fully believe he's rehabilitatable.

During final argument and without objection, the trial counsel argued the following:

Maybe we should give [appellant] a chance to soldier back. But take a look at the evidence before you today that points to his rehabilitative potential. First, he enters the CCC Program—the Drug and Alcohol Rehabilitation Program. That's really one of the main pieces of evidence you have as to his rehab potential. And how did he do? He's not doing it, he's not staying off of liquor and he's drinking again. That piece of rehabilitative effort did not work.

## II

■ Beginning in 1971, federal law required each of the military departments to initiate a program for the identification and treatment of persons dependent on drugs and alcohol.[1] The Secretary of Defense directed that each Service develop its own program. In compliance with that mandate, the Army promulgated the ADAPCP. Army Regulation 600–85, Personnel—General: Alcohol and Drug Abuse Prevention and Control Program (21 Oct. 1988) [hereinafter AR 600–85]. Section II, Chapter 6 of that regulation, entitled Limited Use Policy, provides that certain evidence may not be used against a soldier in actions under the UCMJ. This includes certain mandatory urine or alcohol breath test results, a soldier's self-referral to ADAPCP, certain admissions made by a soldier regarding drug or alcohol abuse, possession of drugs incidental to personal use during initial entry or while enrolled in ADAPCP, or like information obtained as a result of a soldier's emergency medical care for an actual or possible drug or alcohol overdose.[2] The

---

1. Act of Sept. 28, 1971, Pub.L. No. 92–129, § 501, 85 Stat. 348, 361 (1971).

2. The exclusions under the Limited Use Policy are as follows:

Limited Use Policy does not, however, preclude "[t]he introduction of evidence for impeachment or rebuttal purposes in any proceeding in which the evidence of drug abuse (or lack thereof) first has been introduced by the soldier." [3]

Section III, AR 600–85, entitled Release of Personal Client Information, implements federal law and prescribes Army policy pertaining to the release of information on abusers of alcohol or other drugs who are or have been enrolled in the ADAPCP.[4] Its provisions apply not only to individuals responsible for any client record but also to any individual who may have knowledge of the information contained in client records. The regulation specifically mentions the penalties contained in the federal statutes. AR 600–85, paragraph 6–9 outlines the con-

> (1) Mandatory urine or alcohol breath test results taken to determine a soldier's fitness for duty and the need for counseling, rehabilitation, or other medical treatment or in conjunction with a soldier's participation in ADAPCP.
> (2) A soldier's self-referral to ADAPCP.
> (3) Admissions and other information concerning drug or alcohol abuse or possession of drugs incidental to personal use occurring prior to the date of initial referral to ADAPCP provided voluntarily by a soldier as part of his or her initial entry into ADAPCP.
> (4) Admissions made by a soldier enrolled in ADAPCP to a physician or ADAPCP counselor during a scheduled interview concerning drug or alcohol abuse or possession of drugs incidental to personal use occurring prior to the date of initial referral to ADAPCP.
> (5) Information concerning drug or alcohol abuse or possession of drugs incidental to personal use obtained as a result of a soldier's emergency medical care for an actual or possible drug or alcohol overdose, unless such treatment resulted from apprehension by military or civilian law enforcement officials.

AR 600–85, para. 6–4*a*. Although application of the Limited Use Policy is automatic, it does not preclude a counselor from reporting to the appropriate authorities knowledge of other illegal acts committed by a soldier. *See* AR 600–85, para. 6–4*b*.

**3.** AR 600–85, para. 6–43(1). The failure to include "alcohol abuse" in this paragraph appears inadvertent in light of the provisions of the Limited Use Policy which make reference to incidents of alcohol abuse in each provision. We conclude that if a military accused first introduces evidence of alcohol abuse (or lack thereof), further introduction of evidence for impeachment or rebuttal purposes would then be proper.

ditions for disclosure of "... any information or record of identity, diagnosis, prognosis, or treatment of any client." This includes disclosure within the Armed Forces when there is an official use and need to know and providing information to the Veterans Administration; in certain situations with the consent of the client; and, without the client's consent if release is to medical personnel to meet a medical emergency, to qualified personnel conducting scientific research, audits, or program evaluations, and upon issuance of a proper court order. *Id.*, para. 6–9*a–c.*

## III

This court has addressed the issue of confidentiality of ADAPCP information in

**4.** 42 U.S.C. § 290dd–3(a) (Supp. IV 1986) provides as follows:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to alcoholism or alcohol abuse education, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

42 U.S.C. § 290dd–3(b) allows disclosure of the information with the written consent of the patient concerned, and disclosure without that consent under certain circumstances: to medical personnel to the extent necessary to meet a bona fide medical emergency; for the purpose of conducting scientific research or performing audits or program evaluations provided this involves no disclosure of patient identities; and, if authorized by an appropriate order of a court of competent jurisdiction. 42 U.S.C. § 290dd–3(e) provides that the prohibitions of this statute do not apply to any interchange of records within the Armed Forces, between components of the Armed Forces, or between the Armed Forces and the Veterans Administration and provides that the prohibitions do not apply to the reporting under state law of incidents of suspected child abuse and neglect to appropriate authorities. 42 U.S.C. § 290dd–3(f) provides that a person who violates the statute shall be fined not more than $500.00 for the first offense, and not more than $5,000.00 for each subsequent offense.

previous opinions. In *United States v. Howes*, 22 M.J. 704 (A.C.M.R.1986), the accused was convicted of possession of marijuana with the intent to distribute. During the sentencing proceeding, the defense produced three witnesses who described the accused's duty performance and recommended that he be retained in the service. *Id.* at 705. During cross-examination, and without objection from the trial defense counsel, the trial counsel asked two of these witnesses if they were aware that the accused had previously been enrolled in the ADAPCP. When the accused testified during his unsworn statement that the most serious trouble he had been in prior to the marijuana offense was receipt of one parking ticket, the trial counsel called the accused's company commander, who testified that the accused had undergone treatment in the ADAPCP and had been declared a rehabilitative success prior to the possession offense. During his closing argument, the trial counsel drew the court's attention to the fact that the accused had been declared a rehabilitative success in the ADAPCP. Trial defense counsel did not object to the rebuttal or to the trial counsel's final argument. *Id.*

Because the accused had not first introduced evidence of his involvement in the ADAPCP, nor did he consent to disclosure of that information, the court in *Howes* concluded that the evidence was inadmissible and should have been objected to at trial by trial defense counsel. *Id.* at 706.

In *United States v. Johnson*, 25 M.J. 517 (A.C.M.R.1987), *pet. denied*, 26 M.J. 226 (C.M.A.1988), the accused was convicted of possessing lysergic acid diethylamide with intent to distribute. During the sentencing phase of the trial, the accused's company commander testified on direct examination that after the accused had received nonjudicial punishment for a previous drug offense, he was command-referred to the ADAPCP, and subsequently declared a rehabilitative failure when he missed several appointments. *Id.* at 518. During final argument, the trial counsel referred to this testimony in arguing that the accused had no potential for rehabilitation. The trial

defense counsel did not object to the testimony or the argument. *Id.* This court, in concluding that the testimony was admissible, found that the provisions of the Limited Use Policy applied rather than Section III, Chapter 6 of AR 600–85, which addresses the release of personal client information. Although the holding in *Howes* is based upon its interpretation of the confidentiality statute, the court distinguished *Howes* from the case before it on the basis that *Howes* had been tried prior to the version of AR 600–85 which adopted the Limited Use Policy. *Id.*

In *United States v. Thomas*, 26 M.J. 735 (A.C.M.R.1988), *pet. denied*, 28 M.J. 253 (C.M.A.1989), the accused was convicted of violating a lawful general regulation by wrongfully possessing a switchblade knife, assault with a dangerous weapon, and assault with intent to inflict grievous bodily harm. During the sentencing phase of the trial, two witnesses testified on behalf of the accused stating that her work was outstanding and she had excellent potential for rehabilitation. *Id.* During cross-examination, the trial counsel asked both witnesses whether they were aware that the accused had been enrolled in the ADAPCP, that she had been ordered not to consume any alcohol, and that she had subsequently been observed drinking beer. One witness stated he was aware of those facts but both persisted in their original testimony. All this occurred without objection by the trial defense counsel. *Id.* This court discussed the federal statutes controlling disclosure of this type of information and concluded that "[i]n order to raise an issue under the disclosure prohibition, an accused must demonstrate that the individual revealing the information is responsible for or otherwise has access to the information contained in the accused's client records." *Id.* at 737. Despite the language of the confidentiality provisions of AR 600–85, this court then held that since no information was developed at trial on how the trial counsel knew of the accused's enrollment in the ADAPCP, and there was no objection to the evidence by trial defense coun-

sel, the issue had been waived.[5]  *Id.* at 738.

The Air Force Court of Military Review has also addressed the confidentiality of drug abuse records.  In *United States v. Fenyo,* 6 M.J. 933 (A.F.C.M.R.), *pet. denied,* 7 M.J. 161 (C.M.A.1979), the appellant was convicted of larceny and possession of stolen property.  During the sentencing portion of the trial, the appellant testified that he would like the opportunity to be rehabilitated and called two witnesses on his behalf, one testifying that he believed the appellant could be rehabilitated, and the other stated that with proper guidance and training, the appellant "would make a very good fireman and military man."  *Id.* at 934.  In rebuttal, and over defense objection, the government introduced evidence that the appellant had been enrolled in the drug rehabilitation program and "had not been regularly advanced."  *Id.* at 934.  The court discussed the confidentiality statute, see note 4, *supra,* and concluded:

> In the case at hand, the [appellant] did not consent to the release of the confidential drug records for his "benefit;" nor do we interpret the [appellant's] request for rehabilitation as a result of this conviction for larceny and possession of stolen property as opening the door to his confidential drug records.  Therefore, it was error to permit the witness to testify as to the [appellant's] confidential drug rehabilitation record.

*Id.* at 934.  The court's decision was based on its analysis and interpretation of both the confidentiality statute and the Air Force regulation.[6]  *Id.*

Although it involved facts distinguishable from those in *Fenyo,* the Air Force Court reached the same conclusion in the case of *United States v. Cruzado–Rodriguez,* 9 M.J. 908 (A.F.C.M.R.1980), *aff'd,* 14 M.J. 124 (C.M.A.1982) (summary disposi-

tion).  There, the appellant was convicted of drug offenses and, during sentencing, the military judge accepted information showing that appellant was entered into the drug prevention program.  In addition, the trial counsel argued that the appellant was not a candidate for any rehabilitation because he used drugs subsequent to his enrollment in the program.  The court held that admission of the information, which related directly to the drug abuse prevention program, was precluded by the provisions of the confidentiality statute and Air Force policy.  *Id.* at 909.

A more recent Air Force case, *United States v. Evans,* 20 M.J. 504 (A.F.C.M.R. 1985), *aff'd,* 22 M.J. 192 (C.M.A.1986) (summary disposition), came to a different conclusion and distinguished its holding from that in *Fenyo.*  The appellant in that case committed various offenses, including possession, distribution, and use of marijuana.  During the sentencing portion of the trial, the defense called two witnesses who both testified that appellant could be rehabilitated.  *Id.* at 504, 505.  The appellant then said, in an unsworn statement, that he wanted to stay in the Air Force and would never use drugs again.  In rebuttal, the trial counsel called a drug abuse counselor who stated that appellant's attitude toward rehabilitation and his potential for rehabilitation were both poor.  This witness testified that his opinions were based entirely on his observations of appellant while appellant was enrolled in the drug treatment program.  *Id.* at 505.  In holding the evidence to be admissible, the court in *Evans* relied on paragraph 5–5(d), Air Force Regulation 111–1, Military Justice Guide (1 Aug. 1984), which stated that drug and alcohol records may be disclosed without the patient's consent to rebut or impeach evi-

---

**5.**  This court also stated, in a footnote, that the facts were clearly distinguishable from those in *Howes,* so the rule of that case would not apply in *Thomas.*  *Id.* at 738 n. 3.

**6.**  Air Force Manual 111–1, Military Justice Guide, para. 5–14 (25 Aug. 1975), permitted disclosure of confidential drug abuse records, with the written consent of the patient, "to Govern-

ment personnel for the purpose of obtaining benefits to which the patient is entitled."  42 U.S.C. § 290ee–3 (Supp. IV 1986) (formerly found at 21 U.S.C. § 1175(b)(1), (2)).  The Air Force Court concluded that "this includes the 'benefit' of use at trial by court-martial and during the post-trial clemency evaluation."  *Fenyo,* 6 M.J. at 934.

dence presented by the accused. *Id.* at 505.

The Court of Military Appeals has addressed this issue in *United States v. Gunter*, 29 M.J. 140 (C.M.A.1989). In that case, the accused was found guilty of a two-day unauthorized absence and wrongful use of cocaine. During the sentencing phase of the trial, the defense submitted evidence to support the proposition that the accused was a likely candidate for rehabilitation and retention in the Air Force. *Id.* at 141. At the conclusion of the defense case in extenuation and mitigation, the government called a witness in rebuttal. This individual was in charge of the base drug and alcohol abuse control program and testified that the accused had been enrolled in the program and that, based on the witness' knowledge of the accused, the accused's potential to avoid cocaine use and rehabilitate himself was poor. *Id.* The court concluded that this was exactly the sort of statement that is addressed by Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1001(b)(5), and envisioned by the opinion in *United States v. Ohrt*, 28 M.J. 301 (C.M.A.1989). *Id.* The court also held that the information was not protected and cited paragraph 4–2b(3)(a), Air Force Regulation 30–2, Social Actions Program (1986), which provides that if the client first introduces evidence of drug abuse (or lack thereof), the government may disclose information from drug and alcohol program files for impeachment or rebuttal purposes.[7] *Id.* at 142. Noting that the Air Force Court had held that records of treatment for substance abuse may be released to courts-martial under circumstances similar to those in *Gunter*, see *United States v. Evans*, 20 M.J. 504 (A.F.C.M.R.1985), *aff'd*, 22 M.J. 192 (C.M.A. 1986), the Court of Military Appeals held that, under the circumstances of the *Gunter* case, the witness could properly refer to the contents of the drug rehabilitation file when stating the basis of his belief that

the accused would not abstain from drugs in the future. *Id.*

## IV

In the case now before us, we will address the following issues: Whether the information concerning appellant's enrollment in the ADAPCP for an alcohol problem and his return to drinking alcoholic beverages after treatment is relevant to the issue of his potential for rehabilitation after trial; if so, whether the protections afforded the appellant under the Limited Use Policy limited in any way the admission of this information during the sentencing phase of appellant's court-martial; if not, whether the statutory and regulatory provisions concerning the confidentiality of information on those who are or have been enrolled in the ADAPCP prohibit admission of the information before the trial court in this case.

█ As previously indicated, trial defense counsel, in objecting to trial counsel's cross-examination of the defense witness, SSG M, limited his objection on the basis of lack of relevance. As defined in the Manual for Courts–Martial, United States, 1984, Mil.R.Evid. [hereinafter Mil.R.Evid.] 401, relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. We are satisfied that, once the appellant presented testimony to the effect that he had the potential to be rehabilitated, the fact that he had been enrolled in the ADAPCP for an alcohol problem, received treatment, and had lapsed back into consuming alcohol would be relevant to that issue. The witness, when confronted with this, readily conceded that. In our view this is no less true in this case even though the appellant was convicted of drug offenses and not of any offense involving the use or abuse of alcoholic beverages. The final weight to be given to SSG M's testi-

---

7. AR 600–85 contains the same language at paragraph 6–4e(1): The Limited Use Policy does not preclude the introduction of evidence for impeachment or rebuttal purposes in any pro-

ceeding in which the evidence of drug abuse (or lack thereof) first has been introduced by the soldier.

mony is within the province of the members.

■ It is well settled that failure to make a timely and sufficiently specific objection may waive the objection for purposes of both trial and appeal. Mil.R.Evid. 103(a); *United States v. Means*, 20 M.J. 522 (A.C.M.R.1985), *aff'd*, 24 M.J. 160 (C.M. A.1987). In this case, we hold that trial defense counsel has failed to meet his burden for preserving the issue. Further, the issue does not rise to the level of plain error; thus waiver applies.

■ We conclude that the Limited Use Policy was not violated in this case, see note 2, *supra*, but whether this information was protected from disclosure at appellant's trial by the confidentiality statute is a more difficult question. The facts presented here are distinguishable from those in *Gunter*, 29 M.J. 140. There, the accused was convicted of wrongful use of cocaine. When he offered evidence that he was a likely candidate for rehabilitation, the government rebutted that contention with the testimony of a witness who stated that the accused's potential to stay off cocaine was poor. The witness was allowed to testify that this opinion was based on information contained in the accused's drug rehabilitation file. *Id.* at 141. In the case now before us, the appellant was convicted of distribution of marijuana and conspiracy to distribute marijuana. Once SSG M testified that, in his opinion, appellant could be rehabilitated, the trial counsel attempted to impeach the witness with the questions pertaining to appellant's treatment in the ADAPCP for alcohol abuse and his subsequent "relapse" in continuing to drink alcohol.

Had the proper objection been made at trial, the appellant could have asserted his right to confidentiality as provided in 42 U.S.C. § 290dd–3 *et seq.*, and Section III, Chapter 6, AR 600–85. This would have then required the trial counsel to request that the military judge issue a court order to allow the members to receive and consider the information that appellant was enrolled in the ADAPCP and had received treatment for an alcohol problem.[8] Given the facts of this case, if trial defense counsel had made the proper objection and trial counsel had then requested an order to bring this information before the members, it could have properly been granted by the military judge. Thus, neither the Limited Use Policy nor the confidentiality provisions would have precluded the government from introducing evidence of appellant's participation in the ADAPCP.

We have considered the other assignment of error and deem it to be without merit. In addition, with regard to the issue of sentence appropriateness, we have examined the entire record and considered the matters briefed by appellant, and have determined that the sentence, as approved, is appropriate.

The findings of guilty and the sentence are affirmed.

Senior Judge MYERS and Judge JOHNSON concur.

---

**8.** Concerning issuance of a court order, 42 U.S.C. § 290dd–3(b)(2)(C) provides that the contents of any record covered by the statute may be disclosed, irrespective of the patient's consent:

If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment

services. Upon granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

In addition to the above, Public Health Services, Department of Health and Human Services, 42 C.F.R. § 2.65 (1988) outlines procedures and criteria for court orders authorizing disclosure and use of records to criminally investigate or prosecute individuals who are or have been enrolled in programs such as the ADAPCP.